HENRY H. ROGERS v. JAMES A. WHITNEY.

November Term, 1916.

Present: MUNSON, C. J., WATSON, HASELTON, POWERS, and TAYLOR, JJ.

Opinion filed January 3, 1917.

*Lien Notes—Description of Property—Burden of Proof—Waiver
—License to Sell Mortgaged Property—When Implied.*

A description of property in a lien note, as in a chattel mortgage, is
sufficient if it points out the property with such degree of certainty
as will enable a third person by its aid, together with the aid of
such inquiries as the instrument itself suggests, to identify it.

A description in a lien note of a horse covered thereby by age, sex,
color, weight and marks, and specifying the horse as the one sold
and delivered by the payees of the note to the maker on the date
of the note, is *prima facie*, at least sufficient.

In an action of replevin, the burden of showing that defendants have
waived a lien, set up by them in defense to plaintiff's claim, is
upon plaintiff.

A waiver is the intentional relinquishment of a known right, and may
be express or implied, but if the latter it must be evidenced by
some act or conduct unequivocal in character.

A waiver always involves a matter of intention, and is ordinarily a
question of fact, but may become a question of law when the facts
are admitted or otherwise established, and does become such un-
less the facts themselves give rise to opposing inferences.

An unconditional license to sell mortgaged property operates, when acted
upon, as a waiver of the security, and it is wholly immaterial
whether such license is oral or written, express or implied.

Where property is sold upon condition that title is not to pass until
payment, but upon the understanding that it is to be sold by the
buyer in the ordinary course of business, the seller thereby gives
an implied license to sell, and waives the right to insist upon the
security as against one who has purchased in good faith without
notice of the condition.

REPLEVIN for two horses. Plea the general issue. Trial
by court at the June Term, 1916, Windsor County, *Slack,* J.,
presiding. Judgment, on the facts found, for the defendant

to recover his costs with an order that on failure of the plaintiff to pay to the defendant the sum of $32.80 and the costs, the plaintiff should return the horse to the defendant. The plaintiff excepted. The opinion states the case.

*Charles Batchelder* for the plaintiff.

*R. J. Trainer* and *D. A. Pingree* for the defendant.

POWERS, J. The Johnson & Fifield Company, the defendant in interest, was a dealer in horses at West Lebanon, N. H. It sold two horses to one Barney Levett, who was also a dealer in horses and resided at Hartford, Vt. These sales were made at different times, and on each occasion the Company took from Levett a lien note providing that the horse sold and described should remain the property of the Company until the note was paid. These lien notes were seasonably recorded in the office of the town clerk of Hartford. At the time of these transactions the Company knew that Levett was a horse dealer, that he had no use for horses, and that he intended to resell these particular horses,—and made no objection thereto. The Company had previously sold him several horses which were handled in the same way.

At some time prior to July 6, 1914, Levett sold the horses in question to one Copeland, who on that day sold them to the plaintiff who had no actual knowledge of the lien notes. As a part of the purchase price, the plaintiff gave Copeland a negotiable promissory note for $425, payable in installments. This note went into the hands of the Johnson & Fifield Company of which fact the plaintiff had due notice; and on June 5, 1914, he went to the office of the Company at West Lebanon and paid the $425 note. The Company was then informed and fully understood that this note had been given for the horses described in the Levett notes, and it took the plaintiff's money and surrendered the Copeland note saying nothing about having liens on the horses under the Levett notes. Later on, a representative of the Company, accompanied by the defendant, an officer, called upon the plaintiff, demanded payment of the Levett notes, and this being refused, seized the horses thereunder. Thereupon, this action of replevin was brought. The court tried the case below and on its findings rendered judgment for

the defendant to recover his costs. At the plaintiff's suggestion, the court made an order that unless the plaintiff paid the defendant the sum of $32.80, which was the balance due on the Levett notes after applying the avails of the Copeland note, and his costs, the horses replevied should be returned to the defendant.

1. The Levett lien notes were admitted in evidence subject to the exception of the plaintiff based upon the claim that the descriptions of the property therein were too uncertain to be good against him, an innocent purchaser. The descriptions do not essentially differ, and we need to refer to one only. It is as follows: ''This note is given for dark brown gelding, 22 load 25, No. 958, six years old, weight 1,300, star. This day conditionally sold and delivered by Johnson & Fifield Co. to Barney Levett.'' Such a description is sufficient,—at least *prima facie.* We agree with counsel that in this respect these liens stand like chattel mortgages, concerning which the rule is that the description will be sufficient if it points out the property with such degree of certainty as will enable a third person by its aid, together with the aid of such inquiries as the instrument itself suggests, to identify it. *Kimball* v. *Sattley,* 55 Vt. 285, 45 Am. Rep. 614. Discarding all else, the liens before us describe the property by age, sex and color; and *prima facie* this is sufficient. *Shum* v. *Claghorn,* 69 Vt. 45, 37 Atl. 236. The liens were therefore admissible. We need not stop here, however; not only do these liens give the particulars named, but they refer to weight and marks, and finally they clinch the whole matter by specifying the horses as the ones sold and delivered to Levett on the respective days the notes were given. The inquiries which the plaintiff was to pursue to discover the truth were unmistakably pointed out.

2. The plaintiff insists that the Company, by its implied consent that Levett should sell the horses in the regular course of business, waived its liens. There is no express finding that the Company did in fact consent to such sales, and on the question of waiver the burden was on the plaintiff. *Zeno* v. *Mason,* 90 Vt. 173, 97 Atl. 355. Judgment below was for the defendant; therefore, if in the circumstances shown an express finding is necessary, it is our duty to affirm this judgment.

A waiver is an *intentional* relinquishment of a known right. It may be express or implied, but if the latter it must be evi-

denced by some act or conduct unequivocal in character. *Barber* v. *Vinton*, 82 Vt. 327, 73 Atl. 881. Involving as it always does a matter of intention, it is ordinarily a question of fact. But when the facts are admitted or otherwise established, it may become a question of law. *Nemie* v. *Todd*, 89 Vt. 502, 96 Atl. 14; *Swedish-American Nat. Bank* v. *Koebernick*, 136 Wis. 473, 117 N. W. 1020, 128 Am. St. Rep. 1090; *Fox* v. *Harding*, 7 Cush. (Mass.) 516; *Zwietusch* v. *Luehring*, 156 Wis. 96, 144 N. W. 257. And it does become such unless the facts themselves give rise to opposing inferences.

An unconditional license to sell mortgaged property operates, when acted upon, as a waiver of the security. *Perry* v. *Dow*, 56 Vt. 569; *Ufford* v. *Winchester*, 69 Vt. 542, 38 Atl. 239; *Hunt* v. *Allen*, 73 Vt. 322, 50 Atl. 1103; *Colston* v. *Bean*, 77 Vt. 40, 58 Atl. 795. It is wholly immaterial whether such license is oral or written, express or implied. The record before us discloses a typical case of implied license to sell. When the Company took these liens, knowing that the vendee bought the horses for resale in his business, its silence unequivocally amounted to an implied license to sell them in the regular course of trade. The rule is thus stated by Judge Kellogg in *Armington* v. *Houston*, 38 Vt. 448, 91 Am. Dec. 366: ''Where property is sold upon condition that the title is not to pass until payment, but upon the understanding that it is to be sold by the buyer in the ordinary course of business, the seller would be estopped from asserting any right to it adverse to the right of one who should purchase it in good faith without notice of the condition.'' We need not now concern ourselves with any question as to the accuracy of the term estoppel as frequently used in this connection; the license when acted upon is final and a waiver results as a legal consequence. This holding is supported by many authorities. *Andre* v. *Murray*, 179 Ind. 576, 101 N. E. 81, Ann. Cas. 1916 A, 87, and note on page 90 where the cases are collected.

The plaintiff does not claim that the Company's conduct when it received the avails of the Copeland note amounted to an estoppel, so we give that question no attention.

*Judgment reversed and judgment for the plaintiff.*